UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

JESUS RODAS,

                           Petitioner,

        v.

TIMOTHY FILSON, *et al.*,

                           Respondents.

Case No. 3:16-cv-00546-MMD-CBC

ORDER

Before the Court for a decision on the merits is a petition for a writ of habeas corpus filed by Jesus Rodas, an individual incarcerated in Nevada. (ECF No. 8.) For the reasons that follow, the Petition will be denied.

**I.    PROCEDURAL BACKGROUND**

In the state district court for Clark County, Nevada, Rodas pled guilty to battery with use of a deadly weapon resulting in substantial bodily harm and robbery. (ECF No. 14-7 at 2.) The court sentenced him to 6-15 years on the former and 3-10 years on the latter, to be served consecutively. (ECF No. 14-8 at 11.) The judgment of conviction was entered on November 20, 2013. (ECF No. 14-10 at 2.)

Rodas did not file a direct appeal. On October 30, 2014, he filed, *pro se*, a state habeas petition in the state district court. (ECF No. 14-12 at 2.) Appointed counsel filed a supplemental petition. (ECF No. 14-18.) In response, the State conceded a hearing was necessary on Rodas's claim that he was deprived of his right to an appeal under *Lozada v. State*, 871 P.2d 944 (Nev. 1994). (ECF No. 14-20 at 6.) The court held an evidentiary hearing on January 15, 2016, and subsequently denied the petition. (ECF No. 14-22 (hearing transcript); ECF No. 15-1 (order).)

Rodas appealed. (ECF No. 15-3.) The Nevada Court of Appeals affirmed. (ECF No. 15-17.) On September 12, 2016, Rodas mailed, or handed to a prison official for the

1    purpose of mailing, his federal petition for writ of habeas corpus containing two grounds.

2    (ECF No. 8.) This Court gave Rodas an opportunity to amend the Petition to cure defects

3    in Ground One. (ECF No. 7.)  When Rodas failed to file an amended petition, the Court

4    dismissed Ground One. (ECF No. 10.) The Court now decides Ground Two on the merits.

## II.    STANDARDS OF REVIEW

6          This action is governed by the Antiterrorism and Effective Death Penalty Act

7    ("AEDPA"). 28 U.S.C. § 2254(d) sets forth the standard of review under AEDPA:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

15          A decision of a state court is "contrary to" clearly established federal law if the state

16   court arrives at a conclusion opposite that reached by the Supreme Court on a question

17   of law or if the state court decides a case differently than the Supreme Court has on a set

18   of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An

19   "unreasonable application" occurs when "a state-court decision unreasonably applies the

20   law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. "[A] federal habeas

21   court may not issue the writ simply because that court concludes in its independent

22   judgment that the relevant state-court decision applied clearly established federal law

23   erroneously or incorrectly." *Id.* at 411.

24          The Supreme Court has explained that "[a] federal court's collateral review of a

25   state-court decision must be consistent with the respect due state courts in our federal

26   system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a

27   'highly deferential standard for evaluating state-court rulings,' and 'demands that state-

28   court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010)

2

(first quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); then quoting *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

"[A] federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004), *overruled on other grounds by Murray v. Schriro*, 745 F.3d 984, 999-1000 (9th Cir. 2014); *see also Miller-El*, 537 U.S. at 340 ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).").

Because de novo review is more favorable to the petitioner, federal courts can deny writs of habeas corpus under § 2254 by engaging in de novo review rather than applying the deferential AEDPA standard. *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

## III. DISCUSSION

Rodas's lone remaining claim for relief is that he was deprived of his right to appeal his conviction due to ineffective assistance of counsel. Rodas alleges that he specifically requested counsel to file a direct appeal, but counsel told him he was unable to do so and to "forget about it." (ECF No. 8 at 5.) He further alleges that, despite counsel's response, ///

he (Rodas) again asked counsel to file a timely notice of appeal, which counsel failed to do.

### A. State Court Proceedings

Among the list of rights Rodas agreed to waive under his guilty plea agreement was the following:

> The right to appeal the conviction with the assistance of an attorney, either appointed or retained, unless specifically reserved in writing and agreed upon as provided in N.R.S. 174.035(3). I understand this means I am unconditionally waiving my right to a direct appeal of this conviction, including any challenge based upon reasonable constitutional, jurisdictional or other grounds that challenge the legality of the proceedings as stated in NRS 177.015(4). However, I remain free to challenge my conviction through other post-conviction remedies including a habeas corpus petition pursuant to NRS Chapter 34.

(ECF No. 14-7 at 5-6.) The agreement further provided that: "All of the foregoing elements, consequences, rights, and waiver of rights have been thoroughly explained to me by my attorney." (*Id.* at 6.)

At the state court evidentiary hearing on Rodas's petition for writ of habeas corpus, Rodas's state trial counsel, Gregory Coyer, testified as follows. Coyer could not recall what he and Rodas discussed when they went through the plea agreement, including whether they had any discussion about his appellate rights. (ECF No. 14-22 at 11.) Coyer remembered that the sentence Rodas received was "heavy," either the maximum or close to the maximum under the terms of the plea agreement. (*Id.*) He also recalled Rodas being displeased with the sentence and had a vague recollection of having a discussion with him about it. (*Id.* at 12.) In addition, Rodas had asked him about an appeal. (*Id.*) Coyer "probably indicated" to Rodas that there was "no point to appealing his dissatisfaction with the sentence length." (*Id.*) Coyer would not refuse to file an appeal if a client specifically requested it. (*Id.* at 14.) It was Coyer's practice to advise clients that sentencing was completely up to the judge's discretion, but he could not recall if he and Rodas specifically talked about that or not. (*Id.*) He would never tell a client that he cannot file an appeal, but he would tell a client if he thought there were no issues worth raising on appeal. (*Id.* at 15.) If Rodas had asked him to file an appeal, he would have done so. (*Id.* at 16.) Whatever

4

Rodas had asked Coyer about an appeal, his response was "to discourage the idea that he had appealable issues." (*Id.* at 18.)

Rodas testified as follows. Coyer did not discuss with him the rights he was waiving by pleading guilty. (*Id.* at 21.) Coyer did not talk with him about unconditionally waiving his right to appeal. (*Id.*) He did not understand the provision in the agreement about the waiver. (*Id.* at 21-22.) When Rodas asked him about an appeal after he was sentenced, Coyer indicated "there was no reason to appeal or something like that." (*Id.* at 23.)

In its order denying habeas relief, the state district court stated, in part, as follows:

> This Court finds that it is trial counsel Gregory Coyer's practice to file a direct appeal if a defendant requests that a direct appeal be filed. This Court further finds that if Defendant would have specifically requested Mr. Coyer to file a direct appeal, Mr. Coyer would have filed a direct appeal. Thus, this Court finds that Defendant did not request Mr. Coyer to file a direct appeal and this claim is denied.

(ECF No. 15-1 at 5-6.)

On appeal, the Nevada Court of Appeals cited to *Strickland v. Washington*, 466 U.S. 668 (1984), as the governing standard to determine whether counsel was ineffective. (ECF No. 15-17 at 2.) *Strickland* requires a petitioner to show both (1) his counsel's performance fell below an objective standard of reasonableness and (2) a "reasonable probability" that, but for counsel's errors, the outcome of the proceeding would have been different. 466 U.S. at 687-88, 694. The Nevada Court of Appeals noted, however, that "'when the petitioner has been deprived of the right to appeal due to counsel's deficient performance, the second component (prejudice) may be presumed.'" (ECF No. 15-17 at 2 (citing *Toston v. State*, 267 P.3d 795, 799 (Nev. 2011)).)

The court then stated as follows:

> "[T]rial counsel has a constitutional duty to file a direct appeal in two circumstances: when requested to do so and when the defendant expresses dissatisfaction with his conviction, and that failure to do so in those circumstances is deficient for purposes of proving ineffective assistance of counsel." *Toston,* [267 P.3d at 800].
>
> After hearing testimony at the evidentiary hearing, the district court found it was counsel's practice to file a direct appeal if a defendant requests a direct appeal be filed. Because no appeal was filed, the district court concluded

> Rodas did not specifically request counsel to file an appeal and counsel was not ineffective for failing to file a direct appeal. We conclude substantial evidence supports the decision of the district court and the district court did not err as a matter of law.

(*Id.* at 3.)

### B. Federal Habeas Relief

As noted, for a habeas petitioner to prevail on a claim of ineffective assistance of counsel, he must demonstrate that his trial counsel's representation fell below an objective standard of reasonableness and that, but for any errors, there is a reasonable probability the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687-88, 694. However, in *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the U.S. Supreme Court held that when an attorney's deficient performance costs a defendant an appeal that the defendant would have otherwise pursued, prejudice to the defendant should be presumed "with no further showing from the defendant of the merits of his underlying claims." *Id.* at 484. This presumption applies even when the defendant has signed an appeal waiver. *Garza v. Idaho*, 139 S. Ct. 738, 744 (2019).

An attorney's failure to follow his client's specific request to file an appeal is *per se* ineffective assistance of counsel. *Flores-Ortega*, 528 U.S. at 477; *United States v. Sandoval-Lopez*, 409 F.3d 1193, 1197-98 (9th Cir. 2005). When the defendant has not clearly conveyed his wishes about an appeal, counsel must consult with the defendant when there is reason to think either (1) "a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." 528 U.S. at 480. To show prejudice under these circumstances, the defendant must demonstrate that "there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484.

Reviewed under § 2254(d)(1), the state court's adjudication of Rodas's claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

States." In particular, the Nevada courts denied the claim based solely on a finding that Rodas did not specifically request counsel to file an appeal. That finding is entitled to a presumption of correctness that this Court finds no reason to disturb. *See* 28 U.S.C. § 2254(e)(1). Having so found, however, the state court ended its inquiry without delving into whether counsel consulted with Rodas about an appeal. *See Flores-Ortega*, 528 U.S. at 478 ("In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal."). Alternatively, the state court was obliged to determine whether Coyer had a constitutional duty, based on the *Flores-Ortega* factors noted above, to consult Rodas about an appeal. *Id.* at 480. Because the state court applied a standard to Rodas's claim that was inconsistent with *Flores-Ortega*, this Court must review the claim de novo. *See Jackson v. Attorney Gen. of the State of Nev.*, 268 F. App'x 615, 619 (9th Cir. 2008).

As noted above, Coyer testified at the state post-conviction hearing that Rodas was dissatisfied with his sentence and questioned Coyer about filing an appeal. Rodas's testimony at the hearing was consistent with Coyer's on those points. This Court concludes that was sufficient to trigger Coyer's duty to consult with Rodas about an appeal. *See Flores-Ortega*, 528 U.S. at 480 (imposing a duty to consult so long as the defendant "reasonably demonstrated" his interest in appealing).

The next question is whether or not Coyer did consult with Rodas about filing an appeal—i.e., whether he "advis[ed] the defendant about the advantages and disadvantages of taking an appeal, and ma[de] a reasonable effort to discover the defendant's wishes." *Id.* at 478. At the evidentiary hearing, Coyer testified that he probably indicated to Rodas that there was no point in appealing dissatisfaction with the sentence length. He also testified that he would have so advised Rodas if there were no issues worth raising on an appeal. Rodas's testimony did not significantly conflict with Coyer's. He testified that Coyer told him: "there was no reason to appeal or something like that,"

(ECF No. 14-22 at 23); "an appeal will really do nothing or something like that," (*id.*); "he pretty much told me like it was useless, like – like – like – well, not like in them words, but he pretty much told me like – that an appeal was pretty much nothing," (*id.* at 26); "he told me that, yeah, an appeal was useless," (*id.*); and "once a judge sentences you, that he couldn't do no appeal" (*id.*).

There is little question that Coyer instructed Rodas there was no basis for an appeal and discouraged him from filing one. Under the circumstances, however, this was not necessarily erroneous or unreasonable advice. Rodas had entered a guilty plea and agreed to waive his appeal rights, "including any challenge based upon reasonable constitutional, jurisdictional or other grounds that challenge the legality of the proceedings." Also, notwithstanding Rodas's dissatisfaction with the outcome, his sentence was within the limits of the guilty plea agreement (ECF No. 14-7 at 3) and the applicable statutory provisions. *See* NRS §§ 200.380(2) and 200.481(2)(e)(2).

Even if the conversation between Coyer and Rodas regarding an appeal does not satisfy the definition of "consult" under *Flores-Ortega*, Rodas has not met his burden of establishing that, but for counsel's deficient performance, there is a reasonable probability he would have timely appealed. The record establishes only that Rodas was dissatisfied with the sentence he received and inquired of counsel about an appeal. Mere evidence that defendant expressed interest in an appeal is, without more, "insufficient to establish that, had the defendant received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an appeal." *Flores-Ortega*, 528 U.S. at 486. In addition, the existence of non-frivolous grounds for appeal is not necessary to a find a likelihood Rodas would have appealed, but it is a factor which may be considered in determining whether he has met his burden of proving such likelihood. *Id.* Here, Rodas offers nothing to show he had reason to believe that the state court's decision was flawed or that he had an issue—even a frivolous one—he wanted to raise on appeal.

///

///

Thus, even under the lowered *Flores-Ortega* standard for prejudice, Rodas has failed to show prejudice. Accordingly, his claim of ineffective assistance of counsel does not warrant habeas relief.

## IV. CERTIFICATE OF APPEALABILITY

This is a final order adverse to Petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this Court to issue or deny a certificate of appealability ("COA"). Accordingly, the Court has *sua sponte* evaluated the claims within the Petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

Having reviewed its determinations and rulings in adjudicating Rodas's petition, the Court declines to issue a certificate of appealability for its resolution of any procedural issues or any of Rodas's habeas claims.

## V. CONCLUSION

It is therefore ordered that Petitioner's petition for writ of habeas corpus (ECF No. 8) is denied. The Clerk is instructed to enter judgment accordingly and close this case.

It is further ordered that a certificate of appealability is denied.

DATED THIS 18th day of June 2019.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE